## J. J. BROOKSBANK COMPANY, INC., d.b.a.
## BUDGET RENT A CAR OF MINNESOTA, v.
## AMERICAN MOTORS CORPORATION AND ANOTHER.

184 N. W. (2d) 796.

March 5, 1971—Nos. 42184, 42185.

*Rider, Bennett, Egan, Johnson & Arundel, David F. Fitzgerald,* and *John C. Unthank,* for appellant.

*Dorsey, Marquart, Windhorst, West & Halladay, John D. Levine,* and *Emery W. Bartle,* for respondents.

Heard before Knutson, C. J., and Otis, Rogosheske, Peterson, and Rosengren, JJ.

ROGOSHESKE, JUSTICE.

Consolidated appeals from Hennepin County Municipal Court orders denying plaintiff a new trial after a directed verdict for defendants and dismissing a second action upon the ground that it was barred by the directed verdict in the previous action.

The determinative issue presented is whether the statute of frauds bars plaintiff's alleged cause of action for breach of an oral contract claimed to require defendants to repurchase or secure a dealer to repurchase automobiles sold to plaintiff pursuant to such promise. We conclude that plaintiff's action is not barred and reverse.

The dispute arises out of an alleged oral agreement between plaintiff, a franchised car-rental agency doing business as Budget Rent A Car of Minnesota, and defendants, American Motors Corporation and its subsidiary, American Motors Sales Corporation. Defendants' regional fleet manager allegedly made an agreement with plaintiff whereby defendants were to arrange the sale and repurchase of automobiles. Plaintiff was to buy the Rambler automobiles and use them in its car-rental business for about 1 year, after which they would be repurchased by one of defendants' franchised dealers at an agreed capitalized cost less 2 percent depreciation per month and an additional reduction for abnormal use, which, in case of dispute, would be determined by arbitration.

In 1963, plaintiff purchased and disposed of a fleet of 1964 automobiles pursuant to this plan, and in the fall of 1964, purchased about ten 1965 automobiles. Three of the ten automobiles are the subject of this lawsuit. All of the sale and purchase negotiations with plaintiff were handled by agents of defendants. Defendants informed plaintiff that Hencir-Nichols, a dealer in the

Minneapolis area, would handle the delivery and repurchase obligations for the three automobiles. Plaintiff made out a purchase order addressed to American Motors, Minneapolis, Minnesota, which was apparently sent by plaintiff to Hencir-Nichols, who sold the vehicles and invoiced plaintiff for them. However, unlike the arrangements made as to the other vehicles plaintiff purchased in the past, no written repurchase agreement was ever provided for the three cars in question, despite plaintiff's request that Hencir-Nichols supply such an agreement. At the appropriate time, the three vehicles were not repurchased by Hencir-Nichols, although there appears to be some dispute as to whether the dealer made an offer to repurchase them. In any event, defendants notified plaintiff that they did not intend to repurchase them, and they were thereafter sold by plaintiff at an auction. This action was brought for the difference between the auction receipts and the amount plaintiff would have received under the purported oral repurchase agreement with defendants.

Plaintiff's complaint in the first action alleged that defendants, rather than a retail dealer, agreed to repurchase the automobiles. This allegation was technically defective by reason of the fact that defendants are precluded by franchise agreements with dealers from participating directly in repurchase transactions with customers. In an attempt to correct this technical deficiency, plaintiff refined the allegation and made a motion to amend the complaint so as to allege that defendants sold the automobiles to plaintiff upon a promise to secure a dealer willing to repurchase the vehicles. The trial court denied plaintiff's motion and, at the close of plaintiff's evidence, directed a verdict in favor of defendants, apparently on the ground that defendants were mere guarantors of the dealer's obligation and that therefore the action was within the statute of frauds, which barred plaintiff's action for breach of an oral agreement. On the basis of facts alleged in the aforementioned proposed amended complaint, plaintiff then brought a second action, which was dismissed on the basis of res judicata.

The questions presented by this appeal are whether the lower court properly directed a verdict on the ground that the action was barred by the statute of frauds because defendants were no more than guarantors of another's obligation; whether the court abused its discretion in denying plaintiff's motion to amend the complaint to conform to the evidence; and whether plaintiff's second action is barred by res judicata.

It is elementary that in directing a verdict the lower court must consider the evidence in a light most favorable to the party objecting. Lovejoy v. Minneapolis-Moline Power Imp. Co. 248 Minn. 319, 79 N. W. (2d) 688. The principle that the statute of frauds, Minn. St. 513.01(2), does not apply to an "original" undertaking also is well established. See, e.g., Burkel v. Pro-Vid-All Mills, Inc. 273 Minn. 297, 141 N. W. (2d) 143. The decisive question presented is whether the evidence, viewed most favorably to plaintiff, raised a question of fact as to whether defendants' assurance that the automobiles would be repurchased was an original undertaking or merely a promise to guarantee the dealer's obligation to repurchase.

The pertinent part of Minnesota's statute of frauds, § 513.01, provides:

"No action shall be maintained, in either of the following cases, upon any agreement, unless such agreement, or some note or memorandum thereof, expressing the consideration, is in writing, and subscribed by the party charged therewith:

\* \* \* \* \*

"(2) Every special promise to answer for the debt, default or doings of another; \* \* \*."

Defendants assert that at most the evidence established only a promise that they would guarantee the dealer's repurchase agreement, thus bringing such an agreement within § 513.01(2) and unenforceable because there was no writing. Plaintiff contends that the statute of frauds does not apply because the evidence would permit, if not compel, a finding that defendants

made their own promises rather than merely promising to answer for the dealer's default.

Our examination of the trial transcript reveals that the evidence relevant to the question is conflicting. Negotiations entered into by plaintiff regarding its purchase of fleet vehicles were initiated by defendants' agent. Defendants, through their agent, entered into an agreement with plaintiff whereby defendants would repurchase the automobiles or cause to have them repurchased. All three of the vehicles were sold to plaintiff by Hencir-Nichols, who received some profit for the sales. Defendants did not unequivocally represent to plaintiff that they would repurchase or guarantee repurchase of the automobiles, although they did assure plaintiff of an intent to secure a dealer to repurchase the vehicles. Although defendants intended that Hencir-Nichols would handle the repurchase of the vehicles, plaintiff was assured that if that dealer would not, defendants would find another dealer to do so. Plaintiff dealt with Hencir-Nichols but was under the impression that the underlying agreement was with defendants, as evidenced by testimony and the purchase order. Plaintiff and the dealer were parties to a written sale and repurchase agreement, although the three vehicles in question were apparently not covered by the repurchase contract.

Some interesting precedents cast light on defendants' position. Our recent decision, Burkel v. Pro-Vid-All Mills, Inc. *supra,* relied upon by plaintiff, indicates that the statute of frauds has no application "[w]here the promisor [defendants] has an interest in the performance of a contract with a third party [Hencir-Nichols] and the commitment it makes is not merely an accommodation to the obligor [plaintiff]." 273 Minn. 300, 141 N. W. (2d) 146.

Defendants, on the other hand, rely on the "entire credit test" : If the whole credit is not given to the promisor, his undertaking is collateral and must be in writing. Cole v. Hutchinson, 34 Minn. 410, 26 N. W. 319. They attempt to distinguish Burkel on the ground that plaintiff there was relying solely on the credit

of the alleged guarantor, whereas here they claim he was relying entirely on the credit of Hencir-Nichols. There is little evidentiary foundation for this claim. One problem in determining whether defendants' promise was collateral or original is that the parties may have entertained different notions on that issue. The United States Supreme Court has said that the real character of a promise depends largely on whether the parties mutually understood it to be a collateral or a direct promise. Davis v. Patrick, 141 U. S. 479, 489, 12 S. Ct. 58, 60, 35 L. ed. 826, 829. If, as appears likely, there was no mutual understanding that defendants' promise was collateral, plaintiff's argument is strengthened. This is so because such lack of mutual understanding lends support to the contention that the evidence poses a jury issue, since reasonable men differ on the issue of whether the promise was collateral and therefore within the statute.

As is suggested in 3 Williston, Contracts, § 463, cited by defendants, the use of the terms "original" and "collateral" to qualify promises is not very helpful because such terms are not clearly defined. The distinction is used simply to express whether cases fall within or without the statute of frauds. "Original" promise is defined as one where the leading object of the promisor is to subserve or promote some interest or purpose of his own, as opposed to becoming merely the surety or guarantor of another's debt. Furthermore, according to the treatise, a contract is not brought within the statute by the mere fact that someone other than promisor receives the benefit of consideration. 3 Williston, Contracts, § 464.

Perhaps the most relevant discussion of the problem confronting us is found in 3 Williston, Contracts, § 465, wherein the author considers whether a promise *prior* to the creation of a debt is primary or collateral. He notes that when one induces the creation of a debt by his promise, it is not helpful to try to classify the obligation on the basis of words used. When words are susceptible of variant meanings, a fact issue arises. In the words of the textwriter, "Unless the determination of the matter de-

pends solely upon the interpretation of a written contract, the question should be submitted to the jury." 3 Williston, Contracts, § 465, p. 403. This precisely describes this case and compels the conclusion that a directed verdict was improper. We believe the rule recited in Williston is sound, inasmuch as it is not a purpose of the statute of frauds to permit a party to renege on a promise for which he receives consideration.

This survey of the evidence and the law sheds considerable light on the trial court's view of defendants as at most guarantors of Hencir-Nichols' obligation. Certainly there was evidence introduced which tended to show that defendants were more than guarantors, and it must be recognized that they had a very definite interest in the entire transaction, notwithstanding their claim that the profits belonged to Hencir-Nichols. It seems reasonable to conclude that the jury could have found that defendants, motivated by self-interest, made an original promise to plaintiff for which they received consideration, i. e., purchase of their product through a franchised dealer. The Burkel decision, holding that the statute of frauds does not apply where the promisor has an interest in the performance of the contract with the third party, has persuasive application. Arguably, defendants had an interest in the performance of the contract, and the alleged repurchase guarantee could be viewed as consideration for the sale of defendants' automobiles. Indeed, the evidence is undisputed that American Motors Sales Corporation was established in part for the purpose of sponsoring a fleet sales program with the objective of gaining greater coverage and public exposure of defendants' automobiles in car-rental lots and other fleet service. Under all these circumstances, the municipal court erred in finding as a matter of law that defendants were at most guarantors. A directed verdict is appropriate only in the unequivocal cases where it would be the duty of the trial court to set aside a contrary verdict as manifestly against the entire evidence. Lovejoy v. Minneapolis-Moline Power Imp. Co. *supra.*

The second issue raised by plaintiff is whether the trial court

properly denied its motion for leave to amend its complaint. The proposed amendment alleged that defendants promised to secure a dealer willing to repurchase rather than that defendants agreed to repurchase. Defendants now contend that the amendment would have served no useful purpose since it in no way would have affected the outcome of the suit. They also claim the motion to amend was untimely. However, the pleading rules are clearly liberal in this respect and permit amendment even after judgment. Rule 15.02, Rules of Civil Procedure. Defendants do not allege that they would have been prejudiced if the amendment had been allowed. Under such circumstances, it is difficult to approve the trial court's denial of plaintiff's motion. Presumably, this ruling was motivated in part by the court's view that the evidence supporting the amendment would not save plaintiff's case from a directed verdict. In any event, plaintiff should have been allowed to amend the complaint.

The third issue, arising from the aftermath of the court's denial of plaintiff's motion to amend, need not be decided. It is unnecessary to determine whether plaintiff's second action was barred by res judicata, since the court erred in directing a verdict for defendants. On retrial, plaintiff's second cause of action should now be considered as included in the original action, the amendment to the complaint having been improperly denied.

In summary, the evidence does not support a directed verdict for defendants at the close of plaintiff's case. Consequently, the order denying plaintiff a new trial must be reversed and the case remanded for a new trial. On retrial, the fundamental issue for jury determination is whether defendants' alleged oral promise, as understood by the parties, was merely collateral to, and a guaranty of, the dealer's obligation to repurchase the three automobiles in question, or whether defendants entered into an original or primary undertaking to secure a dealer willing to repurchase the automobiles. The answer to this question of fact can best be decided after the parties have presented all relevant and material evidence. If the agreement was primary, § 513.01(2)

does not preclude enforcement of the oral contract. In accordance with the Burkel decision, the agreement is primary if it is found that defendants had a significant interest in plaintiff's contract with Hencir-Nichols and received consideration for its oral agreement with plaintiff.

Reversed and remanded.