## ARMCO, INC.

### v.

## NEW HORIZON DEVELOPMENT COMPANY OF VIRGINIA, INC.

Record No. 820909

Decided June 14, 1985, at Richmond

Present: All the Justices

*S. J. Thompson, Jr. (Gregory P. Cochran; Caskie, Frost, Hobbs, Thompson, Knakal & Alford*, on briefs), for appellant.

*Killis T. Howard* for appellee.

STEPHENSON, J., delivered the opinion of the Court.

This appeal presents questions relating to a seller's right to limit warranties and remedies under the Uniform Commercial Code (the U.C.C.).

Armco, Inc. (Armco), a corrugated pipe manufacturer, sold a quantity of its pipe to New Horizon Development Company of Virginia, Inc. (New Horizon), a construction company. The purchase order was memorialized by an "acknowledgment," which New Horizon received from Armco. New Horizon regularly placed orders and received acknowledgments similar to those in the present case.

Upon receipt of the pipe and acknowledgment, New Horizon accepted them and paid the purchase price. The acknowledgment contained the following pertinent provisions:

This is an exact duplicate of your order as entered on our plant. ACCEPTANCE OF YOUR PURCHASE ORDER IS VALID ONLY WITH THE INCLUSION OF ALL "CONDITIONS OF SALE" (INCLUDING BUT NOT LIMITED TO LIMITED WARRANTIES, LIMITATION OF BUYER'S REMEDIES, AND LIMITATIONS OF LIABILITY FOR FAILURE OR DELAY IN DELIVERY) ON THE BACK HEREOF, as established by (1) your acceptance of the products herein described, (2) your failure to object promptly to any of said "Conditions of Sale," or (3) otherwise. THE PRODUCTS HEREIN DESCRIBED WILL BE MANUFACTURED AND DELIVERED IN ACCORDANCE HEREWITH ONLY IN RELIANCE UPON YOUR ACCEPTANCE OF SUCH "CONDITIONS OF SALE."

. . . .

## CONDITIONS OF SALE

1. ACCEPTANCE. Any quotation by Seller on the face hereof or on any attachment hereto is merely an invitation for an offer from potential customer(s). All resulting customer offers (orders) are thus subject to acceptance at Seller's offices at the address shown on the face hereof, before any contract is formed. IT IS EXPRESSLY UNDERSTOOD AND AGREED THAT ALL CUSTOMER OFFERS (ORDERS) RESULTING HEREFROM MUST INCLUDE ALL TERMS AND CONDITIONS PRINTED HEREON.

2. LIMITED WARRANTIES. THERE ARE NO UNDERSTANDINGS, TERMS, CONDITIONS OR WARRANTIES NOT FULLY EXPRESSED HEREIN. Seller warrants title to and freedom from encumbrance of the products sold hereunder, and Seller warrants that products bought on the basis of the description thereof, as appears or is referred to on the face hereof, are of merchantable quality. There are no warranties, express or implied, with respect to products sold hereunder which are misused, abused, or operated on mechanical equipment improperly designed or maintained. SELLER MAKES NO OTHER WARRANTY WHATEVER, EXPRESS OR IMPLIED, AND ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE WHICH EXCEED OR DIFFER FROM THE WARRANTIES HEREIN EXPRESSED ARE DISCLAIMED BY SELLER AND EXCLUDED FROM THIS AGREEMENT.

3. LIMITATION OF BUYER'S REMEDIES. Seller's liability hereunder shall be limited to the obligation to repair or replace products proven to have failed to meet the specification or to have been defective in quality or workmanship at the time of delivery, or allow credit therefor, at its option. Seller shall NOT have any liability for any damages in connection herewith on the products to be delivered hereunder, in an amount exceeding the purchase price of the products sold hereunder. IN NO EVENT SHALL SELLER HAVE ANY LIABILITY FOR COMMERCIAL LOSS, CLAIMS FOR LABOR, OR CONSEQUENTIAL DAMAGES OF ANY

OTHER TYPE. IT IS EXPRESSLY AGREED THAT BUYER'S REMEDIES EXPRESSED IN THIS PARAGRAPH ARE BUYER'S EXCLUSIVE REMEDIES.

Armco's pipe is designed for the horizontal transportation of surface water. At an architect's suggestion, however, New Horizon erected sections of the pipe vertically to store water in a passive solar heating system. Leaks developed in the joints and seams of the pipe, and the problem was finally corrected by welding. New Horizon sued Armco for the cost of repairs, alleging breach of express and implied warranties, misrepresentation, and negligence.[1]

Armco contended that, upon acceptance by New Horizon, the acknowledgment became the parties' contract and that it excluded all warranties and remedies except those provided for therein. The court rejected this contention and submitted to the jury the issues of express and implied warranties. The jury returned a verdict in favor of New Horizon, which the trial court approved, and this appeal ensued.

We will summarize the testimonial evidence which Armco unsuccessfully sought to exclude. An architect contacted an Armco sales representative requesting information regarding use of Armco's pipe for the vertical storage of water. The architect was interested in using the pipe in the construction of a passive solar heating system for a bank.

The pipe was used successfully for the bank project. Thereafter, the architect designed another solar heating system for a residence. Armco's pipe also was used in this system. New Horizon was the general contractor for the construction of the residence, including the solar heating system. Upon the architect's advice, New Horizon purchased the pipe from Armco. Armco's representative knew of the proposed project and did not question its feasibility.

The system consisted of five pipes, approximately 30 feet long, installed vertically. (This contrasted with the bank project which contained eight vertical pipes, each of which was 10 feet long.) Because the pipe was not manufactured in 30-foot lengths, it was

---

[1] The trial court ruled that the misrepresentation and negligence allegations were unsupported by the evidence and refused to submit these issues to the jury. New Horizon assigned cross-error to these rulings. Because we find no merit to the assignments of cross-error, we reject New Horizon's contentions.

delivered to the construction site in 10-and 20-foot sections, which were joined to achieve the 30-foot height. When the project was completed, the pipes were filled with water, and the leaks occurred.

Generally, a contract for the sale of goods is unenforceable unless it is evidenced by a writing "signed by the party against whom enforcement is sought." Code § 8.2-201(1). However, *"[b]etween merchants* if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents" (emphasis added), the requirements of Code § 8.2-201(1) are satisfied "unless written notice of objection to [the writing's] contents is given [by the receiving party] within ten days after it is received." Code § 8.2-201(2).

The term "between merchants" applies in any transaction where both parties are "chargeable with the knowledge or skill of merchants." Code § 8.2-104(3).

> *"Merchant"* means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

Code § 8.2-104(1). Thus, as used in the U.C.C., "merchant" denotes a business professional as opposed to a casual or inexperienced seller or buyer. Code § 8.2-104, official comment 1.

When a writing which meets the requirements of Code § 8.2-201 is "intended by the parties as a final expression of their agreement," the terms thereof may not be contradicted "by evidence of any prior agreement." Code § 8.2-202. To limit either warranties or remedies, however, the exclusionary language in the writing must be "conspicuous." Code § 8.2-316(2). Whether a provision is conspicuous is a question of law for a court. Code § 8.1-201(10). *See Lacks* v. *Bottled Gas Corp.*, 215 Va. 94, 96, 205 S.E.2d 671, 673 (1974).

A provision is deemed to be conspicuous when "it is so written that a reasonable person against whom it is to operate ought to have noticed it." Code § 8.1-201(10). For example, language con-

tained in the body of an agreement is conspicuous if it is written in "larger or other contrasting type or color." *Id.*

Both Armco and New Horizon held themselves out as having knowledge or skills peculiar to the practices involved in the transaction. Armco is a manufacturer and New Horizon a building contractor; both are business professionals. Thus, they are "merchants" as defined by Code § 8.2-104(1). Because the transaction was "between merchants," the acknowledgment became the parties' contract when New Horizon failed to give Armco written notice of any objection within 10 days after receiving the acknowledgment. Code § 8.2-201(2).

Having met the requirements of Code § 8.2-201, the acknowledgment became the "final expression" of the parties' agreement. Code § 8.2-202. Consequently, its terms and provisions, including those limiting warranties and remedies, could not be contradicted "by evidence of any prior agreement." *Id.*

■ This brings us to the central issue in this appeal: whether the provisions of the U.C.C. or Code § 11-4[2] govern the type-size requirements for the contract. As previously noted, the U.C.C. requires only that the excluding language be conspicuous, Code § 8.2-316(2), and language is conspicuous when it is written in larger type, Code § 8.1-201(10). Because the excluding language

---

[2] **§11-4. Sizes of type in printed contracts.**—No contract in writing entered into between a citizen of this State and any person, firm, company or corporation, domestic or foreign, doing business in this State, for the sale and future delivery of any goods or chattels, machinery or mechanical devices, or personal property of any kind or sort whatsoever, shall be binding upon the purchaser, where the form is printed and furnished by the person, firm, company or corporation, unless all of the provisions of such contract are clearly and plainly printed or written; and, where printed, such provisions and covenants and all stipulations as to the rights of the vendor shall be in type of not less than the size known as ten point; and, wherever in such contract, printed upon a form furnished by the vendor, it is stipulated that the vendor is not to be bound by any verbal agreement or modification of the terms of such printed contract, then such stipulation shall be printed as a separate paragraph or paragraphs and in type not smaller than pica. Should any of the contract, including the special stipulation hereinbefore mentioned, be printed in less than the size of type hereby prescribed, and the agent or salesman of such person, firm, company or corporation enter into any verbal or written or collateral agreement with the vendee, on the part of the person, firm, company or corporation, modifying or changing such printed agreement or the parts of the contract which are printed, then the vendee may, in any action instituted to enforce such contract, or the payment of any sum of money agreed to be paid under such contract, be allowed to introduce such collateral agreement, or contract in modification thereof, or any verbal statement made by the agent or salesman in modification thereof, in evidence in such action, and the same, if proved, shall be considered by the court or jury trying the case as a part of such printed contract.

in the contract is in larger type, we hold as a matter of law that it is conspicuous.

█ The type size, however, does not meet the requirements of Code § 11-4 which was in effect prior to the U.C.C. For this reason, the trial court ruled that the exclusions were unenforceable. We hold that the court erred.

Under the facts of this case, Code § 11-4 is inconsistent with the U.C.C. provision requiring that a limiting term or clause need be only conspicuous. Thus, the provisions of Code § 11-4 do not apply to this U.C.C. transaction. *See* Code § 8.10-103.

█ We conclude, therefore, that because the limiting language of the contract was conspicuous within the meaning of the U.C.C., the court erred in submitting the issues of express and implied warranties to the jury. Accordingly we will reverse the judgment of the trial court and enter final judgment for Armco.

*Reversed and final judgment.*