Robert **ESSELMAN**, d.b.a. Esselman Store, Respondent,

v.

**PRODUCTION CREDIT ASSOCIATION OF ST. CLOUD, Appellant.**

No. C8–85–1352.

Court of Appeals of Minnesota.

Jan. 14, 1986.

Review Denied March 21, 1986.

William A. Torell, Torell Law Office, Foley, for respondent.

Thomas A. Janson, Schmitt, Johnson & Marso, St. Cloud, for appellant.

Heard, considered and decided by PARKER, P.J., and FORSBERG and NIERENGARTEN, JJ.

## OPINION

FORSBERG, Judge.

This is an appeal from a judgment only, entered on April 30, 1985, after a court trial in favor of Robert Esselman, doing business as Esselman Store (Esselman). The trial court found that the Production Credit Association (PCA) orally promised to pay Esselman for Allen Kampa's bill and that PCA directly benefited from the promise. We reverse.

### FACTS

Robert Esselman runs a farm supply store in Benton County. Allen Kampa, not a party to this lawsuit, is a dairy farmer who also grows corn and hay. The PCA is a lending institution which finances farmers.

In the spring of 1981 Kampa contacted Esselman about purchasing herbicides and fertilizers for his crops. Esselman made it his practice not to extend credit to first time customers. Because Kampa was a first time customer, Esselman insisted that he pay cash or demonstrate some financial backing.

At Kampa's request Esselman telephoned Tim Klassen, a loan officer with the PCA, to seek assurances that he would be paid if he sold Kampa the chemicals. Klassen's job at the time was to administer credit and to acquire new accounts in the Benton County area.

The content of the conversation between Kampa and Esselman is a matter of dispute. Esselman testified on direct examination that Klassen promised that PCA would pay Kampa's bill. On cross-exami-

nation he agreed that he knew Allen Kampa had to approve of the payment before PCA could issue a check to him.

Klassen denied promising to pay Kampa's bill. He testified on direct examination that Kampa had no funds available to pay for the chemicals at that time, but that he expected there would be funds in the future. He stated that PCA had budgeted money to be paid for the fertilizer, seed, and chemical bills to be paid but that Kampa was limited to a peak balance. At that time Kampa had reached the peak so he did not currently have funds for the Esselman bill. Klassen indicated that in order for money to be paid out Kampa would have to make payments to a figure below that peak balance.

Klassen further testified that he told Esselman that in addition to making payments, Kampa would have to request a check to be sent to Esselman's Store. He agreed that Esselman told him that his policy on the first-year customers was not to sell a product without checking into the customer's background, and that Esselman was looking for some assurance of payment. Klassen estimated that funds might be available around the 1st of June.

The details of Kampa's prior relationship with PCA are important to an understanding of the facts. Klassen testified at trial that Allen Kampa had a loan with the PCA for the period of December 31, 1980 to January 1, 1982. The initial loan had a "peak" of $125,000 which was later extended and secured. The loan terms allowed Kampa to borrow up to the peak on a continuing basis. When he made payments which lowered the peak, he could borrow up to that amount again as necessary.

Klassen's testimony indicated that the PCA cannot pay a creditor directly without the farmer's prior approval and that the PCA does not guarantee a creditor's payment.

Kampa had a security agreement for the 1981 season with the PCA. The collateral covered by the agreement included all the livestock, machinery, chattel property, equipment, all crops and all products of the crops. PCA was fully secured, according to Klassen's testimony, so that if Allen Kampa defaulted on his loan, PCA could recoup the entire loan without relying on the crops. Additionally, testimony was admitted that PCA had a second mortgage on the real estate.

Esselman completed delivery of the herbicide and fertilizer to Kampa in June of 1981. The total bill was $12,719.67. PCA paid Esselman $6,000 in October and $3,000 on another occasion by check. Klassen testified that Kampa specifically requested these payments. Kampa agreed. Kampa paid $500 on the bill on July 1, 1982, and $1,500 on September 16, 1982. Esselman is suing PCA for the balance owed of $1,719.67 plus interest.

The case was tried before a court without a jury. As its defense PCA argued that it never promised to pay Kampa's debt. In the alternative PCA argued that even if a promise to pay was found, it was unenforceable under the Statute of Frauds.

The trial judge ordered judgment in favor of Esselman. He made several findings, two of which are pertinent here. First, he found that PCA did promise to pay Robert Esselman for the chemicals purchased by Allen Kampa. Second, the trial court found that PCA directly benefited from Esselman's delivery of and Kampa's use of the chemicals for crop production.

Regarding the first finding, the court in its memorandum stated:

It is clear that Plaintiff would not have delivered the chemicals absent a promise of the Defendant, this being a business practice of Plaintiff's in dealing with first time purchasers.

As to the second finding the trial court ruled:

Defendant had a substantial interest in having Allen Kampa succeed in his farming operations as a result of monies loaned by Defendant to Allen Kampa and through the security agreement Defendant held against Allen Kampa's property. This security agreement covered crops

grown by Allen Kampa which had been treated by the chemicals obtained from Plaintiff. The law in this state is that,

> where the promisor has an interest in the performance of a contract with a third party and the commitment it makes is not merely an accommodation to the obligor, the Statute of Frauds has no application and an oral agreement, if established, is valid.

*Burkel v. Pro-Vid-All Mills, Inc.*, 141 N.W.2d 143 (1966). This is the situation in this case.

*Id.* No post-trial motions were made.

PCA appeals from the judgment, arguing that the trial court's findings should be set aside as clearly erroneous.

### ISSUES

I. Was the trial court's finding that PCA promised to pay Esselman for Kampa's bill clearly erroneous?

II. Was the trial court's finding that PCA directly benefited from its promise to pay Esselman clearly erroneous?

### ANALYSIS

■ No post-trial motions were made in this case. The appeal here is solely from the judgment. Accordingly, the only questions for review are whether the evidence sustains the findings of fact and whether such findings sustain the conclusions of law and the judgment. *Gruenhagen v. Larson*, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976).

■ When the court sits without a jury, the judge's findings have the same effect as the jury's determination of the facts. Rule 52.01 provides that the court's findings should not be set aside unless they are clearly erroneous. Minn.R.Civ.P. 52.01; *see Serbus' Estate v. Serbus*, 324 N.W.2d 381, 385 (Minn.1982). Clear error exists if the reviewing court is left with the definite and firm conviction that a mistake has been made. *Desnick v. Mast*, 311 Minn. 356, 366, 249 N.W.2d 878, 884 (1976).

### I.

Appellant urges reversal of the trial court's finding that PCA promised to pay arguing that Esselman's proof consists solely of his own uncorroborated testimony. Both Klassen and Kampa testified that the payments made by PCA were made only upon the approval of Allen Kampa. Esselman testified on cross-examination that Kampa's approval was necessary. This testimony supports appellant's theory that it was Kampa, not PCA, who had an obligation to Esselman and Kampa who controlled the payment of creditors.

Direct evidence of whether or not a promise was made consists only of the testimony of these three witnesses. It is obvious from reading the transcript that none of the witnesses remembers the conversation exactly and, if there was an agreement, what specific terms were agreed upon. Only this much is clear: Klassen made an assurance that he thought there would be funds to cover the bill in Allen Kampa's account in the future.

■ While this may have been sufficient for Esselman's purposes, it is insufficient evidence to create a contract whereby PCA agreed to pay Kampa's bill of over $12,000. The trial court clearly erred by finding that a contract existed here, based upon such minimal evidence. The finding is particularly questionable considering the fact that the only supporting evidence is testimony by a party to the suit who has a direct interest in the outcome.

### II.

Appellant argues that even if there was a promise to pay, it is unenforceable under the Statute of Frauds. The Minnesota Statute of Frauds provides that an oral agreement to pay the debt of a third party is unenforceable. Minn.Stat. § 513.01(2) (1984). The purpose of this provision of the Statute of Frauds is to enable the courts to ensure that one who receives no benefit from a promise is bound only by the exact terms of his promise. *Davis v. Patrick*, 141 U.S. 479, 487–88, 12 S.Ct. 58, 59–60, 35 L.Ed. 826 (1891). An oral agree-

ment to pay one's own debt is enforceable because if the parties dispute its exact terms, courts can charge the promisor the reasonable value of the subject matter of the promise. *Id.* at 487, 12 S.Ct. at 59. But when the third party is the real debtor, and the one receiving the benefit of the promise the courts are unable to resolve conflicts in memory or testimony to accomplish justice. *Id.* There is also a temptation for a promisee, in a case where the real debtor has proved insolvent or unable to pay, to enlarge the scope of the promise or to torture mere words of encouragement into an absolute promise. *Id.* at 487–88, 12 S.Ct. at 59, 60. A promisor receiving no benefits should be bound only by the exact terms of his promise, so a writing is required. *Id.* at 488, 12 S.Ct. at 59.

▮ Assuming there was a promise here, the question whether this statute bars its enforcement depends on whether PCA directly benefited from the promise as an original promisor. If so, the statute does not bar enforcement, because the promise is treated as if PCA was promising to pay its own debt rather than another's debt. If PCA did not benefit from the promise, the promise is a collateral one. A collateral promise is not enforceable under the Statute of Frauds unless there is a writing.

Whether a promise is original or collateral depends upon what the parties mutually understood the promise to be. *Davis* at 489, 12 S.Ct. at 60. This can be discerned not only from the language used by the parties, but also by evidence of the circumstances and acts of the parties. *Id.*

Appellant maintains that the promise, if any, was not made primarily to serve the interests of PCA, but to benefit Allen Kampa. Appellant points out that PCA was fully secured. If Kampa defaulted, PCA would have sufficient collateral to recover the amount of the loan. The PCA was not dependent upon the success of the crops for which Kampa bought the chemicals in order to recoup its loan.

The evidence supports appellant's theory. There is no evidence in the record to show that Kampa was insolvent or in danger of going out of business. Respondent's speculation that "the failure of numerous farmer debtors could create a snowballing effect, causing debtors' assets to devalue and ultimately causing PCA to fail," is insufficient to create the kind of primary benefit to PCA to make PCA an original promisor. *Cf. Burkel v. Pro-Vid-All Mills, Inc.,* 273 Minn. 297, 300, 141 N.W.2d 143, 146 (1966) (defendant feed store took over insolvent turkey farmer's obligations to prevent him from going out of business and to protect its security interest; defendant was dependent upon successful operation of farm in order to recoup prior losses). It was not essential to PCA, in order to recover its loan, that Kampa purchase the herbicide and fertilizer. The promise was not made *primarily* to benefit PCA.

▮ Undoubtedly, PCA indirectly benefited from Kampa's use of the chemicals on his crop which served as some protection for part of PCA's security. PCA correctly points out, though, that the mere fact that *some* benefit inures to the promisor does not alone make it an original undertaking.

## DECISION

The trial court clearly erred in finding that PCA promised to pay Kampa's bill and that such promise was of direct benefit to PCA.

Reversed.