**MARVIN LUMBER AND CEDAR COMPANY, a Minnesota corporation, Plaintiff,**

v.

**F. Neal JOHNSON, Defendant.**

No. Civ. 6–89–107.

United States District Court,
D. Minnesota,
Third Division.

March 28, 1990.

David P. Pearson and Eric J. Nystrom, Winthrop & Weinstine, St. Paul, Minn., for plaintiff.

David D. Himlie, Dederick & Himlie, P.A., Minneapolis, Minn., for defendant.

## MEMORANDUM AND ORDER

DEVITT, District Judge.

### INTRODUCTION

In this diversity action for breach of contract and fraudulent and negligent misrepresentation arising out of a personal guarantee made to plaintiff by defendant, both plaintiff and defendant move for summary judgment. For the reasons stated below, plaintiff's motion for summary judgment is granted, and defendant's motion for summary judgment is denied.

### BACKGROUND

Plaintiff Marvin Lumber and Cedar Co. is a Minnesota corporation whose principal place of business is Warroad, Minnesota. Plaintiff is a leading manufacturer of custom made wood windows and doors. Since the 1970s plaintiff used Texas Jambs, Inc. of Austin and Texas Jambs, Inc. of Houston (hereinafter "Texas Jambs") to distribute much of its merchandise.

Defendant F. Neal Johnson was founder, principal shareholder, officer and director of Texas Jambs. He provided financial backing to establish Texas Jambs. Defendant's responsibilities included negotiating with banks to establish lines of credit. Johnson Depo. p. 38. He was involved in Texas Jambs' market strategies, employment policies, credit policies and delivery policies. Brandon Aff. ¶¶ 4, 5. In addition, defendant owned or had an interest in several insurance companies in the Alexandria, Indiana area, and is a licensed agent and real estate broker.

On October 8, 1986, defendant personally guaranteed, by telephone, payment of Texas Jambs' outstanding accounts payable to plaintiff and also guaranteed payment for certain window products to be delivered to Texas Jambs during the weeks of October 6 and October 13, 1986. John W. Marvin, Vice Chairman of Marvin Windows, took the call on behalf of plaintiff. On October 8 and 15, 1986, plaintiff shipped to Texas Jambs window products.

Plaintiff confirmed the October 8, 1986 telephone conversation with a letter dated the same date and sent to defendant's business address in Alexandria, Indiana. The letter made reference to the telephone conversation between Mr. Marvin and defendant, advised defendant that plaintiff would release a truckload of windows for delivery to Texas Jambs, and set forth the terms of defendant's guarantee to plaintiff. Specifically, plaintiff stated:

> We are doing this [delivering window products to Texas Jambs] with the understanding that you will personally guarantee the past due amount of $42,770.85 for Texas Jambs in Austin, and all amounts that are shipped in subsequent loads to Texas Jambs in Austin and/or Houston during the week of October 6 and/or October 13.

Defendant does not recall receiving plaintiff's October 8, 1986 letter. However, the affidavit of Mr. David Brandon, former president of Texas Jambs of Austin, states that he was present at the Texas Jambs'

office on October 8, 1986 when defendant received the telephone call from plaintiff. Mr. Brandon states that defendant informed him that he, defendant, "guaranteed the payment" for the window products. Brandon Aff. ¶ 9.

Texas Jambs subsequently ceased doing business on October 15, 1986 without paying plaintiff approximately $117,000 for windows shipped. On July 25, 1988, plaintiff's credit manager, Judi Brewster, sent a letter to defendant demanding full payment of Texas Jambs' overdue account in the amount of $133,633.16. This letter, which enclosed a copy of plaintiff's October 8, 1986 letter to defendant, confirmed defendant's personal guarantee as follows:

> On October 8, 1986, you gave your personal guarantee that all past due invoices and future amounts due Marvin Windows, would be paid. You indicated that you had substantial real property holdings with which you could back up your personal guarantee for payment.

Ms. Brewster states that defendant admitted receiving the July 25, 1988 letter. Brewster Depo. p. 22. Defendant has not paid plaintiff the requested amount.

## DISCUSSION

In short, defendant denies that there was ever any personal guarantee and contends that the matter is barred by the general Minnesota Statute of Frauds (Minn.Stat. § 513.01(2)). Furthermore, defendant contends that there was never any fraudulent or negligent misrepresentation of material facts that would give rise to a cause of action against defendant. Plaintiff argues that defendant's personal guarantee is an oral contract enforceable under both the Minnesota Statute of Frauds and the Uniform Commercial Code's (hereinafter "UCC") Statute of Frauds. Plaintiff moves for summary judgment on its claim for breach of contract against defendant. Defendant, in turn, moves for summary judgment on plaintiff's claims for breach of contract and fraudulent and negligent misrepresentation.

A. *Summary Judgment Standard*

Summary judgment is appropriate where there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The Supreme Court has stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of truth at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). When reviewing the record on summary judgment, the court must view the facts in the light most favorable to the party which is opposing the motion and give that party the benefit of all reasonable inferences to be drawn from the facts. *See Loudermill v. Dow Chemical Co.,* 863 F.2d 566, 571 (8th Cir.1988).

B. *Minnesota Statute of Frauds*

■ An oral promise by one to answer for the debt of another can be barred by the statute of frauds. *Minn.Stat.* § 513.01. The statute of frauds, however, does not bar enforcement of the contract when the promisor has an interest in the performance of a contract and the guarantee is not made to merely accommodate the debtor. *J.J. Brooksbank Co. v. American Motors Corp.,* 289 Minn. 404, 184 N.W.2d 796, 799 (1971); *Burkel v. Pro–Vid–All Mills, Inc.,* 273 Minn. 297, 141 N.W.2d 143, 146 (1966); *Esselman v. Production Credit Ass'n.,* 380 N.W.2d 183, 187 (Minn.Ct. App.1986).

In this case, defendant, as founder, principal shareholder, director and officer of Texas Jambs, had a great personal interest in obtaining additional window shipments from plaintiff. The shipments made by plaintiff to Texas Jambs during the weeks of October 6 and 13, 1986 enabled Texas Jambs to generate cash ($50,000 from the October 6 shipment to Texas Jambs–Austin alone) enabling the company to pay off creditors to whom defendant was personally obligated. Mr. David Brandon states

that, had plaintiff not shipped products to Texas Jambs during the weeks of October 6 and 13, 1986, Texas Jambs would have been forced to cease business immediately. In summary, defendant's personal guarantee is an oral contract enforceable under the Minnesota Statute of Frauds.

### C. Uniform Commercial Code Statute of Frauds

The UCC statute of frauds provides, in relevant part:

(1) Except as otherwise provided in this section a contract for the sale of goods for the price $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought ....

(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received.

*Minn.Stat.* § 336.2–201, subds. 1–2. The confirmatory writing transmitted by plaintiff to defendant on October 8, 1986 satisfies the above provisions of the UCC. Accordingly, plaintiff is not barred from enforcing the contract guarantee against defendant.

### 1. The Oral Agreement Between Plaintiff and Defendant Involved a Contract for the Sale of Goods

■ Defendant's primary contention is that the UCC does not apply here because the actual "contract for sale" existed between plaintiff and Texas Jambs, not plaintiff and defendant. The facts of the case do not support this interpretation. Regardless of the previous contracts entered into between plaintiff and Texas Jambs for the delivery of windows, the conduct of the plaintiff and defendant on October 8, 1986 clearly manifested the existence of a contract pursuant to which defendant guaran-

teed payment of Texas Jambs' obligations to plaintiff. Most significantly, plaintiff did not release the previously withheld shipments of window products to Texas Jambs until after the October 8, 1986 discussion between plaintiff and defendant.

Defendant contends that even if there was a contract between plaintiff and defendant, it did not involve the "sale of goods." The definition of "goods" is "all things (including specially manufactured goods) which are moveable at the time of identification to the contract for sale...." *Minn. Stat.* § 336.2–105(1). Minnesota follows the "predominant factor" test in determining whether a transaction is one for the sale of goods. *See Valley Farmers' Elevator v. Lindsay Bros.*, 398 N.W.2d 553 (Minn.1987). The windows which were the subject matter of the contract between plaintiff and defendant are goods under both UCC and Minnesota law, since they were moveable at the time they were identified to the contract and the substantial purpose of the contact was for the sale of windows, not the rendition of services or the like.

### 2. The Oral Agreement Between Plaintiff and Defendant was Between Merchants

■ Under the UCC, " '[b]etween merchants' means in any transaction with respect to which both parties are chargeable with the knowledge or skill of merchants." *Minn.Stat.* § 336.2–104(3). The UCC defines "merchant" as:

[A] person who deals in goods of the kind or otherwise by occupation holds out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by employment of an agent or broker or other intermediary who by occupation holds out as having such knowledge or skill.

*Minn.Stat.* § 336.2–104(1). The term merchant denotes a business professional as opposed to a casual or inexperienced seller or buyer. *Minn.Stat.Ann.* § 336.2–104, Minnesota and UCC Comment; *Armco,*

*Inc. v. New Horizons Dev. Co. of Va.*, 229 Va. 561, 331 S.E.2d 456 (1985).

Here, defendant is clearly a merchant as required by Minn.Stat. § 336.2–201. Defendant had sold insurance for 25 years and was a licensed real estate broker. He was a major shareholder, director and officer of Texas Jambs who guaranteed lines of credit for Texas Jambs. In addition, defendant received financial information and reports about Texas Jambs and had frequent contact with its president, David Brandon.

### 3. The Writing was in Confirmation of the Contract

■ The writing must be sufficient to indicate that a contract was formed between the parties. The October 8, 1986 letter sent by plaintiff to defendant satisfies this requirement as it makes specific references to the terms and conditions of the oral agreement and includes details of the telephone discussion such as the time of the conversation and the specific amount owed by Texas Jambs.

### 4. The Writing was Sufficient Against the Sender

To be "sufficient against the sender" a writing in confirmation of an oral contract must evidence a contract, be signed by the sender and specify a quantity. *Minn.Stat.* § 336.2–201, subd. 1; *Purdue Farms, Inc. v. Mott's Inc. of Mississippi*, 459 F.Supp. 7, 19 (N.D.Miss.1978). The letter sent by plaintiff to defendant stated that the windows would be sent to Texas Jambs in exchange for defendant's guarantee of payment, it was signed by the plaintiff and supplied a quantity term.

### 5. Defendant Failed to Produce a Written Notice of Objection

A party receiving a writing confirming an oral agreement may not assert the statute of frauds defense under the UCC unless it gives written notice of objection within ten days of the receipt of the confirmatory writing. *Minn.Stat.* § 336.2–201, subd. 2. In this case, defendant made no objection to plaintiff's October 8, 1986 confirmatory letter. While defendant claims

that he never received the letter, Judi Brewster states in her deposition that defendant did acknowledge receipt of her July 25, 1988 letter which contained a copy of plaintiff's October 8, 1986 confirmatory letter.

### 6. Defendant had Receipt of the Confirmatory Writing and Knowledge of its Contents

There is a presumption in the law that, in the absence of proof to the contrary, mail which is properly addressed and sent with postage prepaid is received by the addressee. *Nafstad v. Merchant*, 303 Minn. 569, 228 N.W.2d 548, 550 (1975). Even if defendant did not receive the original October 8, 1986 letter, he did receive a copy in Ms. Brewster's letter of July 25, 1988.

### D. Fraudulent and Negligent Misrepresentation

■ Defendant also moves for summary judgment with regard to plaintiff's claim for fraudulent and negligent misrepresentation (Count II). Misrepresentation cases, however, are generally not susceptible to summary judgment because there are always disputed fact issues. The present case is no exception. There are a number of disputed fact issues with regard to defendant's alleged misrepresentations, such as whether defendant had substantial real estate holdings to pay debts owed plaintiff and whether defendant could personally pay the account indebtedness of Texas Jambs.

### CONCLUSION

IT IS ORDERED That

1. Plaintiff Marvin Lumber and Cedar Company's motion for summary judgment on its claim for breach of contract against defendant F. Neal Johnson is GRANTED.

2. Defendant F. Neal Johnson's motion for summary judgment against plaintiff Marvin Lumber and Cedar Company is DENIED.