FRED O. WATSON CO., et al.,
Respondents,

v.

UNITED STATES LIFE INSURANCE COMPANY IN the CITY OF NEW YORK, defendant and third party plaintiff, Appellant,

v.

EBERHARDT COMPANY, third party defendant, Respondent.

No. 47418–9.

Supreme Court of Minnesota.

Sept. 23, 1977.

---

Johnson, Thompson, Klaverkamp & James Bruce F. Thompson and Patrick J. McLaughlin, Minneapolis, for appellant.

Dorsey, Windhorst, Hannaford, Whitney & Halladay and John M. Mason, Minneapolis, for Watson, et al.

Strong, Tully & Tully and Harlan B. Strong, Minneapolis, for Eberhardt Co.

Heard before PETERSON, KELLY, and PLUNKETT, JJ., and considered and decided by the court en banc.

KELLY, Justice.

Defendant appeals from an order which denied its motion for a new trial, and from the judgment granting plaintiffs specific performance of a standby purchase commitment. Plaintiffs seek review of the judgment insofar as it denies recovery of costs occasioned by defendant's failure to perform. We affirm in part and reverse in part.

Plaintiffs seek specific performance of an agreement between plaintiff Fred. O. Watson Company (Watson) and defendant United States Life Insurance Company in the City of New York. The agreement, a standby commitment[1] dated December 14, 1971, provided that for a fee of $15,000 defendant agreed to purchase at Watson's option, if exercised within 2 years, 48 acres of undeveloped property in Minnetonka, Minnesota, for $375,000. In February 1972, Watson assigned the commitment with defendant's consent to plaintiff Northwestern National Bank of Minneapolis. On Febru-

1. Under a standby purchase commitment, an insurance company agrees to purchase property at a stated price (ordinarily a percentage of the land's market value) from the owner-borrower. The insurance company's credit then establishes this price as a floor for the sales price of the property, and the owner can assign the commitment to a bank and secure a loan up to the level of the commitment. The bank earns money by charging interest on the loan and the insurance company collects a fee for issuing the commitment. If the owner exercises his option, the insurance company is required to purchase the property. Proceeds of the sale pay off the bank loan and the insurance company receives title to the property.

ary 15, 1973, Watson timely exercised its option to require defendant to purchase the property. When defendant refused, plaintiffs commenced this action.

Defendant did not deny the commitment, instead it argued that misrepresentations connected with the transaction soiled Watson's hands and that therefore specific performance should be denied. Defendant in a third-party complaint sued Eberhardt Company, which secured the commitment for Watson from defendant, alleging misrepresentations by it on behalf of Watson. Defendant's allegations of misrepresentations were many. The district court, sitting without a jury, found that the alleged misrepresentations either did not occur, were not false, or were not relied on by defendant. The court ordered specific performance and compensated Watson for costs incurred while defendant failed to honor the commitment. After a hearing on defendant's motions for amended findings and a new trial, the court reversed its award of compensation exceeding legal interest on the purchase price. Two issues are presented to this court:

(1) Did misrepresentation attributable to Watson constitute unclean hands?

(2) If specific performance was properly granted, is Watson entitled to recover compensation for losses caused by defendant's failure to perform?

On appeal defendant cites two fabricated purchase offers and a statement concerning Watson's investment base in the tract as a basis for invoking the doctrine of clean hands. The offers and statement, included among numerous documents comprising the commitment application, are said to have misled defendant as to the value of the property in autumn 1971. Defendant, however, does not challenge the finding of the trial court that no reliance was placed on these representations, instead it suggests that reliance is not an element of a "clean hands" doctrine.

■ Specific performance is an equitable remedy addressed to the discretion of the court. The equitable defense of unclean hands, encapsuled in the maxim "one who comes into equity must come with clean hands," is premised on withholding judicial assistance from a party guilty of unconscionable conduct. Our past decisions do not include a case in which a false statement not inducing reliance was the basis of an unclean hands defense. See, e. g., *Johnson v. Freberg*, 178 Minn. 594, 228 N.W. 159 (1929); *Ross v. Carroll*, 156 Minn. 132, 194 N.W. 315 (1923); *Weed v. Little Falls & Dakota R. Co.*, 31 Minn. 154, 16 N.W. 851 (1883); *Thompson v. Croff*, 182 Minn. 433, 234 N.W. 688 (1931). The weight of authority requires reliance on misrepresentations before they are cognizable as an equitable defense. Annotation, 87 A.L.R. 1345; 2 Story, Equity Jurisprudence, § 1056 (14 ed. 1918); 81 C.J.S., Specific Performance, § 52; 71 Am.Jur.2d, Specific Performance, § 49. Contra, *Shikes v. Gabelnick*, 273 Mass. 201, 173 N.E. 495 (1930). We agree with, and affirm the trial court's award of specific performance.

■ Plaintiffs seek review of the district court's decision disallowing recovery of holding costs borne by Watson because of defendant's failure to honor the commitment. The holding costs arose from the interest due on the mortgage which the proceeds of defendant's purchase was to satisfy. Initially, the court awarded these costs but reversed itself on defendant's post-trial motion, finding that defendant had conducted its defense of the action in good faith and relying on the general rule that legal interest is the only measure of damages for failure to pay a sum of money when due. E. g., *In re Trust Under Will of Comstock*, 219 Minn. 325, 339, 17 N.W.2d 656, 664 (1945).

We think the court's initial determination was correct. In *Indianhead Truck Line, Inc. v. Hvidsten Transport, Inc.* 268 Minn. 176, 128 N.W.2d 334 (1964), we discussed the equitable nature of a specific performance decree and compensation awarded as incidental relief, and quoted from Annotation, 7 A.L.R.2d 1204, 1206:

"The compensation awarded as incident to a decree for specific performance is not

for breach of contract and is therefore not legal damages. * * * The situation is simply that, if the court orders it to be performed, the decree must as nearly as possible order it to be performed according to its terms, and one of those terms is the date fixed by it for its completion. This date having passed, the court, in order to relate the performance back to it, equalizes any losses occasioned be the delay by offsetting them with money payments." 268 Minn. 193, 128 N.W.2d 346.

Accord, *Abrahamson v. Lamberson*, 79 Minn. 135, 81 N.W. 768 (1900). The award of legal interest only does not place the parties in an equitable position. Defendant was well aware that Watson would become a mortgagor, such was the purpose of the complex financing arrangement and indeed defendant consented to the assignment of the commitment to the bank. Specific performance of the contract without compensation for subsequent interest payments on the mortgage occasioned by defendant's failure to perform would not award Watson what it bargained for which was surrender of the property and release from the mortgage at a time of its choosing within 2 years of the date of the commitment. Equity requires that Watson receive compensation for its costs of holding the property from the time of the exercise of its option until the date of our decision.

Affirmed in part, reversed in part, and remanded with instructions to enter judgment for plaintiffs in accordance with this opinion.

OTIS, J., took no part in the consideration or decision of this case.