**In the Matter of the ESTATE OF Nat PETERSON, Deceased.**

**No. C8–84–1874.**

Court of Appeals of Minnesota.

April 2, 1985.

Dennis R. Peterson, Rochester, for James Peterson.

Donald C. Steiner, Rochester, for Marquette Bank & Trust Co.

Peder B. Hong, Red Wing, for Carol Stone.

Considered and decided by HUSPENI, P.J., and WOZNIAK and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

James Peterson, Sr. appeals from an order which held the estate rather than the recipient of the homestead, Carol Stone, responsible for debts which accrued against it during the six-year probate.

Stone appeals from that portion of the same order which denied her reimbursement for her payment of mortgages which were valid liens against the homestead at the time of the decedent's death. We affirm.

## FACTS

Nat Peterson, Lake City, Minnesota died testate on October 5, 1976. Carol Stone and James Peterson, Sr. are the only two children and the only devisees of the decedent. James Peterson, Sr. was named personal representative in the Will. The decedent specifically devised his share of the Nat and Jim Peterson Agency, valued at $110,063.45, to Jim Peterson, along with several tracts of land. The remainder of the estate passed to Carol Stone as the residuary beneficiary. The subject of this appeal is the decedent's homestead in Lake City, Minnesota which passed to Stone under the residuary clause. The value of the homestead is not revealed in the record.

At the time of his death, decedent had as encumbrances against his homestead several mortgages which were security for his personal debts. These are known as the Abraham and Lortscher mortgages. While Peterson was personal representative, he advanced $7,982.56 to preserve the homestead—in payment of the Abraham note, taxes, and insurance. Peterson was reimbursed by the estate for this sum. Peterson then removed himself as personal representative and Marquette Bank and Trust Company, Rochester, Minnesota was appointed successor representative on July 15, 1981.

As representative, the bank advanced $8,420.12 to preserve the homestead in payment of taxes and insurance. Stone would not accept the homestead when it was first offered. The record is silent as to the reason for this delay. The bank then petitioned the court to convey the homestead to Stone, provided Stone reimburse the estate for the $8,420.12 advanced. Stone paid this amount and the homestead was conveyed to her. In a subsequent hearing, this amount was determined to be an expense of the estate, and Stone was reimbursed accordingly. In order to prevent foreclosure on the homestead, Stone paid the $14,-497.94 Lortscher mortgage on the homestead in December 1983.

This matter has been in probate for six years. Stone has challenged the probate of the Nat Peterson Will and has objected to the distribution of the assets of the estate. To do this, she has hired many law firms, both in Minnesota and Illinois. $42,000 in legal fees had been charged to the estate as of July 1984. $274.98 remains in the estate.

## ISSUES

1. Did the trial court err in determining that the estate is not entitled to reimbursement for advancements made to preserve the homestead for the beneficiary during the probate period?

2. Did the trial court err in determining that the homestead should not be exonerated of two mortgages securing personal obligations of the decedent?

## ANALYSIS

### I.

The bank advanced $8,420.12 in taxes and insurance to protect the homestead during probate. Stone then reimbursed the bank as a precondition to its releasing the homestead to her. The trial court ordered the bank to refund Stone, relying on statutory law:

> Where the homestead passes by descent or will to the spouse or children or issue of deceased children, it shall be exempt from all debts which were not valid charges thereon at the time of decedent's death * * *.

Minn.Stat. § 525.145, subd. 3 (1984).

■ Appellant argues that since Stone caused the delay in probate, she should pay the debts incurred during that delay. The record we have before us does not reveal the reasons the estate has remained unsettled for over six years. Accordingly, we cannot ascertain whether any party has

acted in bad faith, nor whether such a finding would change this result. The trial court was correct. The $8,420.12 debt is the responsibility of the estate, not the beneficiary.

## II.

Carol Stone received the decedent's homestead through the residuary clause, subject to a $14,497.94 mortgage, which she subsequently paid. She now seeks reimbursement for that sum. The question is whether the mortgage, granted by the decedent, is to be paid by the devisee Stone, or by the estate. The trial court found Stone responsible for the payment of the mortgage, relying on Minn.Stat. § 524.-2–609 (1984):

A specific devise passes subject to any security interest existing at the date of death, without right of exoneration regardless of a general directive in the will to pay debts.

Stone argues that since the homestead passed through the residuary clause, it is not a specific devise and not subject to section 524.2–609. Stone's argument is incorrect.

■ At common law, the word devise denoted a testamentary gift of land. All devises were specific, regardless of whether these land gifts were specifically described in the Will or were transferred through the residuary clause. Further, the common law doctrine of exoneration applied exclusively to testamentary gifts of land, i.e., specific devises. Section 524.2–609 abrogates the common law doctrine of exoneration. Since exoneration applied to all testamentary gifts of land, it logically follows that the nonexoneration statute equally applies to all gifts of land.

Although section 524.2–609 is dispositive of this question, we will address Stone's other arguments.

■ (1) Stone argues that, because the notes supporting the mortgage were personal debts of the decedent, they should have been an expense included in the administration of the estate. This simply is not the law. Section 524.2–609 does not distinguish the type or nature of the debt. The operative language is "any security interest."

(2) Stone's next argument is that the testator's intent was for the mortgages to be paid off prior to conveyance. The pertinent portions of the Will are as follows:

## ARTICLE I

I direct that all of my legal debts, expenses of my last illness, funeral, all inheritance, estate and other similar taxes assessed against my taxable estate or the recipient thereof, whether by this Will or otherwise, shall be paid as soon after my decease as conveniently may be.

Article II devises several tracts of land to Peterson, directing him to assume the mortgages of those lands: "with my son assuming any mortgages, liens or other encumbrances against said tracts of land."

Article III, through which the homestead in question passed:

I give, devise and bequeath from the rest, residue and remainder of the property the sum of One Thousand Dollars to each of my grandchildren and the balance thereof I give, devise and bequeath to my daughter, Carol Stone.

■ Stone argues that since the residuary clause is silent as to assumption of mortgages, the testator intended for the estate to pay them, relying on *In re Warner's Will*, 240 Minn. 540, 61 N.W.2d 840 (1953). The Warner court held, in pertinent part:

Where a settlor in creating a trust aptly uses meaningful words in some provisions, especially where such provisions are all related to the cestuis [beneficiaries] of the same general class, and aptly refrains from using such words in other provisions for a cestui belonging to another class, the use of such words in one case and not in the other has a signifi-

cant bearing upon the question of the settlor's intent.

*Warner* at 545, 61 N.W.2d at 843.

■ The *Warner* case is not applicable. That opinion held that when a testator devises in one provision "to A and his heirs" and in another provision "to A," the omission of "and his heirs" in the latter provision should be deemed intentional. This principle cannot be extended to mean that where a decedent bequeathed some property with the mortgages to be assumed and bequeathed other property with no such directive, he intended the mortgage to be paid by the estate.

(3) Finally, Stone argues that since her brother was reimbursed for a separate mortgage on this homestead which he paid while he was the personal representative, she also should be reimbursed.

■ Her argument belies the fact that when her brother paid off the mortgage, he was acting in his professional capacity as personal representative, and when she paid the mortgage she was acting in her personal capacity as heir to her father's Will. Stone's brother was reimbursed because, as personal representative, he was required by law to make the payment. The representative must "take all steps reasonably necessary for the management, protection, and preservation of, the estate in his possession." Minn.Stat. § 524.3–709 (1984). The payments Stone made were for her benefit; she was not in a fiduciary relationship with the estate. Stone advanced sums to pay off the security interest against the homestead which she received. Peterson advanced funds to maintain the homestead, an asset he did not receive.

### DECISION

Expenses incurred to preserve and maintain the homestead after the decedent's death were properly charged to the estate.

A specific devise passes subject to any security interest existing at the date of death without the right of exoneration.

Affirmed.