*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0296**

In the Matter of the Estate of: Rosalie S. Allard, Decedent

**Filed December 21, 2015
Affirmed in part, reversed in part, and remanded
Rodenberg, Judge**

Hennepin County District Court
File No. 27-PA-PR-09-1585; 27-08-3379

Mary R. Allard, Prior Lake, Minnesota (pro se appellant)

Jon L. Farnsworth, Felhaber Larson, Minneapolis, Minnesota (for respondent Nicolas Allard)

Paula Duggan Vraa, Larson King, LLP, St. Paul, Minnesota (for respondents Kim Tophen and Senior Options, Inc.)

Considered and decided by Schellhas, Presiding Judge; Rodenberg, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**RODENBERG**, Judge

On appeal from the probate court's approval of the final accounting in her deceased mother's estate, appellant Mary Allard argues that the court (1) lacked authority to act concerning the exempt homestead property, (2) improperly allowed estate administration expenses to be charged against property subject to the homestead allowance, (3) misconstrued decedent's will, (4) clearly erred in determining that the personal

representative (PR) did not breach her fiduciary duties by improperly liquidating assets, (5) failed to properly supervise the PR's administration of the estate, (6) erred in failing to make findings on the issue of unclean hands regarding the actions of respondent Nicolas Allard, and (7) erred in failing to address her request for attorney fees pursuant to Minn. Stat. §§ 524.3-712 and 524.3-720 (2014). Respondents and cross-appellants Kimberly Tophen and Senior Options, Inc., argue that the probate court erred in determining that decedent's cooperative share was a "homestead" under Minn. Stat. § 524.2-402 (2014). We affirm in part, reverse in part, and remand for further proceedings.

## FACTS

Decedent Rosalie Statz Allard died testate on November 8, 2009. She was survived by her two adult children, appellant and respondent Nicolas Allard. At the time of her death, decedent lived in a condominium cooperative community located in Edina, Minnesota.

Decedent validly executed her will on August 21, 1980. The will nominated appellant as PR and directed the PR to pay all "funeral expenses, expenses of last illness, other claims allowed in the administration of [the] estate [and] . . . all death taxes of any character, including interest and penalties . . . ." The will directed the PR to "satisfy all gifts contained in this Will as soon as deemed convenient by [the] executor" and gave "equal shares" to decedent's surviving children in "the interest [she] may have in household goods and furnishings, books, works of art, jewelry, articles of personal use, automobiles, and all other tangible personal property not otherwise disposed of by this Will." The will further gave decedent's residuary estate in equal shares to decedent's surviving children.

2

*2008 Codicil*

In 2008, appellant's relationships with decedent and Nicolas Allard became "contentious." In April 2008, decedent appointed respondent and cross-appellant Kim Tophen of Senior Options, Inc., as her attorney-in-fact under a power-of-attorney. On September 12, 2008, decedent validly executed a codicil to her will designating Tophen as her PR, Nicolas Allard as her first-alternate choice as PR, and appellant as her second-alternate choice as PR. Decedent died fourteen months later.

### The Probate Process

On December 10, 2009, Tophen petitioned to be formally appointed PR of decedent's estate. Appellant objected and requested that she be appointed PR. Appellant later withdrew her objection to Tophen's appointment, and Tophen was appointed PR in a supervised administration as agreed by the parties.

In July 2010, the PR discovered that a significant amount of personal property had been removed from decedent's cooperative unit. The PR contacted police and learned that appellant had removed the property over a three- or four-month period. Appellant had also accessed decedent's safety deposit box and removed some personal family documents, jewelry, coins, and savings bonds. The missing personal property from the cooperative unit were not returned to the estate until November 2010, and the items missing from the safety deposit box were not returned until December 2011. The PR maintains that her ability to timely complete an inventory was impaired because of these missing items.

In December 2010, appellant filed complaints with the Office of Lawyers Professional Responsibility Board against the PR (a non-lawyer), the estate's attorney, and Nicolas Allard's attorneys. These complaints were dismissed without investigation.

In December 2010, the PR attempted to arrange an estate sale with the cooperative community's authorized company. In January 2011, she sent a letter to both appellant and Nicolas Allard informing them of the estate sale and allowing them to go through a pre-sale to select items of interest. The pre-sale was intended to allow the beneficiaries to "purchase" items for a determined value. Because the estate was then solvent, any payments the beneficiaries made or owed would be accounted for in the final account and in the final distribution.

On February 4, 2011, appellant moved for a temporary restraining order (TRO) to prohibit the PR from selling, donating, or disposing of decedent's personal property and gold coins. Appellant demanded that all of the personal property be professionally evaluated before an estate sale was held. That same day, the probate court issued a TRO prohibiting the PR from selling, donating, or disposing of decedent's coins until she provided an inventory of the estate pursuant to Minn. Stat. § 524.3-706 (2010) and until the probate court determined the assets' fair market value, the administration's reasonable expenses, and the necessity to sell devised assets to pay the reasonable expenses. On February 11, 2011, the PR objected to the TRO and filed the completed inventory. On February 22, 2011, the probate court issued an order determining that the coins were tangible personal property, enjoining the PR from selling or otherwise disposing of the coins without further court order, and reserving any issues of abatement of specific devises.

4

On March 15, 2011, appellant moved to remove the PR. Nicolas Allard opposed the motion. On June 15, 2011, the probate court issued an order prohibiting the PR "from performing any acts or activities as the personal representative," except for preparing to liquidate the estate's stock shares, preparing a final account, and to preserve the estate's assets until an evidentiary hearing on appellant's petition. The record does not reflect that any hearing was held until November 21, 2011.

Between April and November 2011, appellant and Nicolas Allard attempted to mediate their differences. Mediation failed, because appellant maintained that the beneficiaries needed to remove items from the unit before continuing the mediation process. On November 1, 2011, the PR petitioned to withdraw due to non-payment of fees and because of her belief that "[appellant] will never cooperate with [her] in the administration of her mother's estate." Appellant responded on November 18, 2011, agreeing with the PR's request for withdrawal, but claiming that she had tried to cooperate and that the PR was merely trying "cut bait and run." Nicolas Allard objected to the PR's withdrawal and requested that any excess attorney or PR fees and expenses be charged against appellant because of her "bad faith actions." At the November 21, 2011 hearing, the probate court ordered that: (1) the beneficiaries pay their own appraiser fees; (2) the PR's time be charged to the estate; (3) all appraisals, the selection of sentimental property, and appellant's return of the still-missing jewelry occur by December 31, 2011; and (4) the PR file an amended final account.

On January 19, 2012, the PR filed a petition to approve the sale and distribution of personal property and liquidation of the remaining estate assets. On February 15, 2012,

5

the probate court held a bench trial to determine the value of personal property, determine the distribution of sentimental property, and authorize the PR's sale of the personal property. On February 28, 2012, the probate court issued an order dividing the requested sentimental property and permitting the PR to sell and dispose of the remaining personal property at her sole discretion. In April 2012, the cooperative share was sold. The remaining personal property was moved to a different location for an estate sale that was held in June 2012. The remaining coins were sold on September 21, 2012.

On February 14, 2013, appellant commenced a civil lawsuit against Nicolas Allard, the PR, the estate's attorney, and others not associated with this probate matter (Hennepin County file number 27-CV-13-2714). The district court granted summary judgment to the PR on appellant's claims for alleged violation of Minn. Stat. § 523.21 (2012) (breach of fiduciary duty under a power-of-attorney), intentional infliction of emotional distress, negligence, fraud, conspiracy, and aiding or abetting tortious conduct. The district court also granted summary judgment to Nicolas Allard on appellant's claims against him for intentional infliction of emotional distress, conspiracy, and aiding or abetting tortious conduct. The district court allowed appellant's claims for trespass and vicarious liability to continue. Appellant did not appeal the district court's order in that case, and the record on appeal does not reflect what became of appellant's remaining claims in that case.

On August 6, 2013, the probate court ordered the PR to file the final account, which was done on September 24, 2013. On October 24, 2013, appellant moved for a continuance to complete discovery regarding the final account. On October 28, 2013, appellant

6

requested a hearing concerning her claims against the PR for breach of her fiduciary duties and against Nicolas Allard for "unclean hands."

On January 29, 2014, the probate court dismissed appellant's claims as collateral attacks on the district court's order in appellant's civil lawsuit against the PR, Nicolas Allard, and others not involved with this appeal. Appellant appealed that order, and, after informal memoranda addressing the immediate appealability of the January 29, 2014 order, we issued a special term order dismissing appellant's appeal as taken from an interlocutory, nonappealable order. *See In re the Estate of Rosalie S. Allard, Deceased*, No. A14-0511 (Minn. App. Apr. 29, 2014).

The probate court suspended the proceedings during appellant's first appeal and ordered the PR to file and serve an amended final account and complete responses to discovery requests by April 4, 2014. On April 4, 2014, the PR filed the amended final account. A second amended final account was filed on June 30, 2014.

Appellant objected to the second amended final account, arguing that the PR (1) did not act in the estate's best interest; (2) "egregiously" erred in the administration, causing substantial losses of estate assets; (3) used estate assets to "wage a personal vendetta" against appellant; (4) impermissibly allowed tax liabilities and penalties to the estate; (5) overstated the value of miscellaneous personal property; (6) failed to consider the cooperative share under the homestead exemption in Minn. Stat. § 524.2-402 (2012) and allowed the value of the cooperative share to be reduced by various expenses; (7) failed to properly value decedent's savings bonds and shares; and (8) improperly incurred over $65,000 in professional fees. Appellant also requested attorney fees.

*Trial and Order*

On October 27-29, 2014, the probate court held a bench trial on the second amended final accounting and appellant's breach-of-fiduciary-duty claims against the PR. The parties disagreed concerning the nature and character of decedent's cooperative share. According to cooperative documents, the cooperative holds title to the entire project, including the individual dwelling units and common areas. Cooperative members hold both a membership in the form of shares in the cooperative corporation and an occupancy agreement (comparable to a lease) for the individual dwelling unit. The cooperative's information bulletin states: "Member owns Membership and Occupancy Agreement. Such ownership interest constitutes personal property." The cooperative requires that the shares only be transferred or sold either to the cooperative or to an individual approved by the cooperative.

On December 17, 2014, the probate court issued an order determining that the PR had not breached her fiduciary duties and that appellant's actions had caused the five-year delay in the estate's administration. The probate court found that the estate incurred the following expenses: (1) $43,416.39 to the estate's attorney (plus $242.11 as a pre-death expense); (2) $8,284.50 to the estate's secondary attorney; (3) $13,550.50 to the PR;[1] (4) $2,350 to the accounting firm; (5) federal taxes of $3,694; and (6) state taxes of $864 for a total of $72,401.50. The probate court determined that only $34,228.69 remained for

---

[1] This number appears to come from the PR's post-trial briefing. The PR's testimony at trial was that she had incurred $13,492.61 in fees at the time of the October 27-29 trial. The difference is de minimus, in context.

8

distribution. The probate court therefore ordered that the remaining funds on hand be distributed 64 percent to the estate's attorney, 12 percent to the estate's secondary attorney, 20 percent to the PR, and 4 percent to the accounting firm.

The probate court also determined that decedent's cooperative share was a "homestead" under Minn. Stat. § 524.2-402 (2014), and therefore exempt from administrative expenses. Decedent's cooperative share was sold in April 2012, and the estate received a "net share value refund" of $6,080.20. The refund of the share was less than its full value of $35,910 on the date of death due to the following expenses: unpaid monthly charges from November 2009 until April 2012 of $26,511.80; required refurbishing costs of $2,600, and a transfer fee of $718. The probate court ordered that the net refund be divided equally between appellant and Nicolas Allard. This appeal followed.

**D E C I S I O N**

We evaluate a probate court's findings concerning wills and trusts under a clearly erroneous standard, and we review its conclusions of law de novo. *In re Trust Created Under Agreement with Lane*, 660 N.W.2d 421, 425-26 (Minn. App. 2003) (citation omitted). "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made." *In re Estate of Neuman*, 819 N.W.2d 211, 215 (Minn. App. 2012) (citation omitted).

**I. Homestead Status of Cooperative Share**

The PR argues by cross-appeal that the probate court erred in determining that the cooperative share is a homestead under Minn. Stat. § 524.2-402 (2014). The term "homestead" is not defined in that statute or elsewhere in the Uniform Probate Code.

9

However, the statute provides that homestead includes a "manufactured home which is the family residence." *Id.* (a). Homestead is also referred to as "real estate." *Id.* (b) (stating that the "homestead . . . descends as other real estate"). Moreover, Minnesota cooperative law recognizes cooperative shares as real property in some instances, *see* Minn. Stat. § 515B.3-116(h)(2) (concerning foreclosure of association's lien where "unit owners' interests are real estate"), and as personal property in other instances, *see* Minn. Stat. § 515B.3-116(h)(3) (concerning foreclosure of association's lien where "unit owners' interests are personal property").

"[T]he underlying rationale of [Minn. Stat. § 524.2-402 is] that 'the surviving spouse and children have an emotional attachment to their home and a strong economic interest in either its continued occupancy or its availability as an asset.'" *In re Estate of Bonde*, 694 N.W.2d 74, 77 (Minn. App. 2005) (quoting *In re Estate of Riggle*, 654 N.W.2d 710, 714 (Minn. App. 2002)). We have previously looked to debtor-creditor law in considering whether property has homestead status for purposes of treatment of that property under the probate code, because debtor-creditor law "more closely parallels the objective of the probate code provisions for descent of the homestead." *Id.*[2] Minn. Stat. § 510.01 (2014) defines a homestead as "[t]he house owned and occupied by a debtor as the debtor's dwelling place, together with the land upon which it is situated to the amount of area and value hereinafter limited and defined . . . ."

---

[2] We note that the probate court considered Minnesota's tax statutes rather than debtor-creditor law to determine the homestead issue. Our review is de novo and we give no deference to the probate court's legal analysis, which departs from Minnesota's debtor-creditor homestead law.

Minnesota appellate courts have historically taken a liberal view concerning homestead claims. *See, e.g.*, *Denzer v. Prendergast*, 267 Minn. 212, 126 N.W.2d 440 (1964) (holding that an owner of a remainder in fee subject to a life estate is entitled to an exemption when he is in possession of the house under an oral agreement); *In re Emerson*, 58 Minn. 450, 60 N.W. 23 (1894) (holding that a person with a leasehold interest is entitled to the exemption when in possession during his tenancy); *Kaser v. Haas*, 27 Minn. 406, 7 N.W. 824 (1881) (holding that an owner with an undivided interest in land occupied as a homestead is entitled to the homestead exemption); *Cargill, Inc. v. Hedge*, 358 N.W.2d 490, 492 (Minn. App. 1984) (holding that individuals are entitled to claim a homestead exemption against land assigned to their family farm corporation), *aff'd*, 375 N.W.2d 477 (Minn. 1985).

Members in the cooperative where decedent lived hold shares in the cooperative corporation and have an occupancy agreement (comparable to a lease) for the individual dwelling unit. That members occupy units under a lease arrangement is not inconsistent with the units' status as homesteads. The Minnesota Supreme Court has determined that an individual who holds a leasehold interest and resides on the property is entitled to the homestead exemption. *Emerson*, 58 Minn. at 453, 60 N.W. at 23. There is no dispute that decedent resided in her cooperative unit for many years until her death. It is also undisputed that appellant and Nicolas Allard have a "strong economic interest in . . . [the cooperative share's] availability as an asset." *Bonde*, 694 N.W.2d at 77. Moreover, and mindful that Minnesota tax statutes are not determinative of this issue, it is notable that

11

Minn. Stat. § 273.124 (2014) grants homestead status to cooperative units occupied by the shareholder.

Based on the record in this case, the PR has not shown that the district court erred in treating decedent's cooperative share as a homestead under the Uniform Probate Code.[3]

## II. Jurisdiction to Address the Homestead Property

Appellant argues that the probate court lacked jurisdiction over the disposition of the cooperative share because it is a homestead property under Minn. Stat. § 524.2-402. Although appellant did not raise this argument before the probate court,[4] and although the probate court did not address the issue in the appealed-from order, appellant appears to be arguing that the probate court lacked subject-matter jurisdiction. Because subject-matter jurisdiction goes to a court's authority to hear a particular class of actions, lack of subject-matter jurisdiction can be raised at any time, including for the first time on appeal. Minn. R. Civ. P. 12.08(c); *Cochrane v. Tudor Oaks Condo. Project*, 529 N.W.2d 429, 432 (Minn. App. 1995), *review denied* (Minn. May 31, 1995).

We review legal issues concerning jurisdiction de novo. *McLain v. McLain*, 569 N.W.2d 219, 222 (Minn. App. 1997), *review denied* (Minn. Nov. 18, 1997). Here,

[3] The PR asks us to issue a rule of general future application regarding the homestead status of all cooperative units. Whether other cooperative units are properly to be treated as homestead property is not before us. Here, he PR has not affirmatively demonstrated error in the probate court's determination that this particular unit was decedent's homestead. *See Loth v. Loth*, 227 Minn. 387, 392, 35 N.W.2d 542, 546 (1949) ("It is well to bear in mind that on appeal error is never presumed. It must be made to appear affirmatively before there can be reversal."). We limit our holding to the facts of this case.

[4] To the contrary, appellant repeatedly requested that the district court address the cooperative share.

12

however, there is no merit to appellant's position. An interest in a homestead, remainder or otherwise, is clearly subject to the jurisdiction of the probate court. *See* Minn. Stat. § 524.2-402(a) (providing for probate disposition of homestead property); *Bengtson v. Setterberg*, 227 Minn. 337, 357-58, 35 N.W.2d 623, 635 (1949) (stating that a probate court has jurisdiction over homestead property). Therefore, the probate court did not lack subject matter jurisdiction to address the homestead property.

## III.  Expenses Charged against the Homestead Exemption

Appellant also argues that the probate court erred in permitting administrative costs to be charged against the exempt homestead property. Minn. Stat. § 524.2-402(c) provides that

> If the homestead passes by descent or will to the spouse or decedent's descendants . . . it is exempt from all debts *which were not valid charges on it at the time of decedent's death* except that the homestead is subject to a claim filed pursuant to section 246.53 for state hospital care or 256B.15 for medical assistance benefits.

(Emphasis added.) Here, the probate court did not expressly permit administrative costs to be charged against the cooperative share. However, the cooperative share's value of $35,910 at the date of the sale was reduced by charges levied by the cooperative community after November 2009. These post-death charges were not "valid charges . . . at the time of decedent's death." *Id.*; *see, e.g.*, *Matter of Estate of Peterson*, 365 N.W.2d 300, 302-03 (Minn. App. 1985) (holding that a bank's advance of $8,420.12 to cover taxes and insurance to protect the homestead during probate "is the responsibility of the estate, not the beneficiary"). Therefore, we must reverse the probate court's homestead disposition

13

and remand for the probate court to distribute the cooperative share's value under Minn. Stat. § 524.2-402(c). It is for the probate court on remand to determine the precise distribution. The probate court may, in its discretion, reopen the record.[5]

## IV.    Decedent's Will

Appellant argues that the probate court misconstrued decedent's will. The legal construction of an unambiguous written document is reviewed de novo. *In re Trust Created by Hill*, 499 N.W.2d 475, 482 (Minn. App. 1993), *review denied* (Minn. July 15, 1993).

"The primary purpose of construing a will is to discern the testator's intent." *In re Estate & Trust of Anderson*, 654 N.W.2d 682, 687 (Minn. App. 2002), *review denied* (Minn. Feb. 26, 2003). "[W]e determine the testator's intent from a full and complete consideration of the entire will." *In re Estate of Lund*, 633 N.W.2d 571, 574 (Minn. App. 2001); *see In re Shields*, 552 N.W.2d 581, 582 (Minn. App. 1996) ("In construing a will, the cardinal rule is that the testator's intention is to be gathered from the language of the will itself."), *review denied* (Minn. Oct. 29, 1996).

> Extrinsic evidence of the meaning of a will is admissible only when the text of the will is ambiguous. *In re Will of Hartman*, 347 N.W.2d 480, 483 (Minn. 1984); *cf. Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 66 (Minn. 1979) (stating that the meaning of a written contract presents a question of law unless there is ambiguity and construction depends on extrinsic evidence, in which case it becomes a question of fact).

---

[5] Appellant also asserts that she is entitled to "restitution" concerning the homestead, an assertion unsupported by any legal authority. The probate court's denial of "restitution" relative to the homestead is affirmed.

*In re Trusts A & B of Divine*, 672 N.W.2d 912, 917 (Minn. App. 2004). A will is ambiguous if "the language of the will, on its face, may suggest more than one interpretation," or if, despite being clear on its face, "surrounding circumstances reveal more than one construction." *In re Estate of Arend*, 373 N.W.2d 338, 342 (Minn. App. 1985).

Here, the will by its terms gives "equal shares" to decedent's surviving children in "the interest [she] may have in household goods and furnishings, books, works of art, jewelry, articles of personal use, automobiles, and all other tangible personal property not otherwise disposed of by this Will." The will further gives decedent's residuary estate in equal shares to the surviving children.

Appellant appears to argue that the probate court erred in allowing the PR to conduct an estate sale before which the beneficiaries could "purchase" items. The estate's attorney testified that the process used by the PR is customary in similarly modest estates. The pre-sale was intended to allow the beneficiaries to "purchase" items for a determined value to assist in equalizing the overall distribution of personal property. Because the estate was solvent at the time of the initial proposed estate sale in January 2011, any payments the beneficiaries made or owed for such items would be accounted for in the final account and in the final distribution.

Appellant also appears to argue that the probate court erred in determining that the personal property items she requested were "sentimental property" pursuant to Minn. Stat. § 525.152(3)(b) (2012), which would require her to pay for the selected items or deduct the value of the items from her share of the estate. Minn. Stat. § 525.152(5)(a). However, appellant herself petitioned for the items to be considered sentimental property. Appellant

also waived this issue by taking the exact opposite position before the probate court to the position she now takes on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating both that this court will not address matters not argued to or considered by the district court and that a party cannot argue a new theory on appeal).

Appellant also ignores the section of the will directing the executor or a court-appointed PR to pay all "funeral expenses, expenses of last illness, *other claims allowed in the administration of [the] estate* and . . . all death taxes of any character, including interest and penalties . . . ." (emphasis added). This section corresponds with Minn. Stat. §§ 524.2-403(e) and 524.3-805(a)(1-7) (2014), which provides that the rights of adult children to the personal property exemption are subject to the costs and expenses of administration, debts, and taxes. The will itself also directs the PR to "satisfy all gifts contained in this Will as soon as deemed convenient." Here, the PR was unable to "satisfy all gifts" quickly due to appellant's objection to her appointment, appellant's removal of a significant amount of decedent's personal property, and appellant's lengthy delay in returning that property. The probate court did not err in subjecting decedent's personal property to the estate's administrative expenses.

The probate court found that the estate incurred the following expenses: (1) $43,416.39 to the estate's attorney (plus $242.11 as a pre-death expense); (2) $8,284.50 to the estate's secondary attorney; (3) $13,550.50 to the PR; (4) $2,350 to the accounting firm; (5) federal taxes of $3,694; and (6) state taxes of $864, for a total of $72,401.50. On appeal, appellant does not challenge the amount of these expenses. She argues only that they were unnecessarily incurred because of the PR's "multiple breaches of fiduciary

duties" and "uber-aggressive constant litigation with [appellant]" to "run[] up the costs of administration [and do] every other conceivable thing to enlarge their fees to the tune of bankrupting the estate and making the beneficiaries pay them even more."

As discussed below, the probate court did not clearly err in determining that the PR did not breach her fiduciary duties. Further, and considering appellant's own testimony that she incurred $217,926.26 in legal fees during the course of all of this, the probate court did not err either in determining that the estate administration's much smaller total expenses were reasonable or in interpreting the will as requiring payment of those expenses before the division of the remaining property.

## V.      Breach of Fiduciary Duties and Improper Liquidation of Assets

Appellant argues that the district court clearly erred in finding that the PR had not breached any fiduciary duties or improperly liquidated assets.[6] A PR owes a fiduciary duty to the estate. Minn. Stat. § 524.3-703(a) (2014). As such, she must manage the estate's assets under the level of care of "a prudent person dealing with the property of another." *Id.* This requires a PR to settle and distribute the estate according to the testator's will and in the best interests of the estate. *Id.*

Whether a fiduciary duty has been breached is a question of fact. *See, e.g.*, *Commercial Assocs., Inc. v. Work Connection, Inc.*, 712 N.W.2d 772, 778 (Minn. App.

---

[6] Appellant previously appealed the probate court's January 29, 2014 order dismissing her claims against the PR as collateral attacks on the district court's order in appellant's civil lawsuit (Hennepin County file number 27-CV-13-2714). On April 29, 2014, we dismissed appellant's appeal as taken from an interlocutory, nonappealable order. *See In re the Estate of Rosalie S. Allard, Deceased*, No. A14-0511 (Minn. App. Apr. 29, 2014). Appellant does not appear to have raised those same issues here.

17

2006) (holding that the district court is "the trier of fact in determining the equitable remedy for a breach of fiduciary duty . . ."); *Christensen v. Bonnema*, 395 N.W.2d 440, 442-43 (Minn. App. 1986) (holding that whether a surveyor breached his fiduciary duty by disclosing information to other individuals was an issue of fact). A district court's findings of fact will not be overturned unless clearly erroneous. Minn. R. Civ. P. 52.01. We will only find clear error if we are "left with the definite and firm conviction that a mistake has been made." *Esselman v. Production Credit Ass'n*, 380 N.W.2d 183, 186 (Minn. App. 1986), *review denied* (Minn. Mar. 21, 1986).

Here, the probate court found that appellant failed to prove that the PR breached any fiduciary duty. The probate court also found as a fact that the delay in the estate's administration was attributable to appellant's actions.

### A.     *Bad Faith*

Appellant argues that the PR acted in bad faith. Many of appellant's claims of bad faith arise from conduct of the PR before decedent's death. Appellant also alleges that the PR should have taken action concerning non-probate assets. However, appellant cites no authority that would allow the PR to address non-probate assets.

Appellant further argues that the PR favored Nicolas Allard both by communicating directly with him and by not contacting police after he had removed property from the cooperative unit. However, the record indicates that it was appellant who, unlike her brother, sought to communicate with the PR through counsel rather than directly.[7]

---

[7] Appellant also sued the PR in a separate case, opposed the PR's actions from the outset, objected to the PR's appointment, and complained to the Office of the Lawyers

18

Additionally, Nicolas Allard contacted the PR shortly after decedent's death to inform her that he had a small amount of decedent's personal property in his possession and that he had entered the cooperative unit to clean out the refrigerator. Conversely, appellant never informed the PR that she had entered the cooperative unit and removed property over a three- to four-month period. The PR discovered the missing property and contacted police only after her appointment. The PR also discovered that appellant had accessed decedent's safety deposit box and removed some personal family documents, jewelry, coins, and savings bonds. The record supports the probate court's determination that the PR did not act in bad faith.

### B. Personal Property

Appellant argues that the PR ignored decedent's will in dividing the personal property of the estate by way of an estate sale. However, as discussed above, the estate's attorney testified that the process used is customary in similarly modest estates and was intended to assist in equalizing the distribution of personal property as required by the will. The probate court did not err in determining that the PR's actions concerning personal property were proper.

### C. Timely Liquidation of the Cooperative Share

The probate court found as a fact that appellant's conduct caused the delay in liquidating the cooperative share. This finding is supported by the record. After decedent's

Professional Responsibility Board about the PR (a non-lawyer), the estate's attorney, and Nicolas Allard's attorneys. Given this level of acrimony and litigation, it is not surprising that there was little, if any, direct communication between appellant and the PR.

death in November 2009, appellant challenged the PR's appointment, resulting in a seven-month delay. Upon her appointment, the PR discovered that appellant had removed a significant amount of personal property from the cooperative share unit. Appellant refused to promptly return the personal property she had removed. When the PR scheduled an estate sale in January 2011, appellant objected and demanded that all of the personal property be professionally evaluated, which caused additional delay. Appellant also attempted to remove the PR, resulting in the June 2011 order prohibiting the PR from doing anything other than liquidating the estate's stock and preparing a final account. Appellant and Nicolas Allard then attempted mediation for seven months. A trial was held on February 15, 2012 to determine the value of personal property, to award the sentimental property, and to authorize the PR's sale of the personal property. On February 28, 2012, the probate court issued an order dividing the requested sentimental property and permitting the PR to sell and dispose of the remaining personal property. The cooperative unit was then sold in April 2012. The record substantially supports the probate court's determination that the PR did not fail to timely liquidate the cooperative share.

### D. Tax Liability

The probate court determined that state and federal taxes owed for 2009 are valid debts of the estate. Given its determination that the PR did not violate her fiduciary duties, the probate court implicitly found that these debts were not incurred as a result of the PR's negligence or misconduct in administrating the estate. The PR testified that she was aware of the potential tax issue. Upon her appointment, she requested 1099 forms from decedent's income source. Once the 1099s were gathered, the PR met with an accountant

20

and with counsel, who opined that decedent had likely incurred no tax liability for 2009. In January 2014, the PR consulted with an accounting firm during her preparation of the final account, and it was then determined that the estate owed taxes for 2009. The record supports the probate court's implicit determination that the 2009 tax liability was not the result of any misconduct by the PR.

## VI. Supervision of the Estate's Administration

Appellant argues that the probate court failed to supervise the PR, "to protect the appellant and estate; to not cause the damages to the heirs and estate by failing to take measures against the personal representative to stop or prevent the damages to the estate." The Minnesota Probate Code defines a supervised administration as

> a single in rem proceeding to secure complete administration and settlement of a decedent's estate under the continuing authority of the court which extends until entry of an order approving distribution of the estate and discharging the personal representative or other order terminating the proceeding. A supervised personal representative is responsible to the court, as well as to the interested parties, and is subject to directions concerning the estate made by the court on its own motion or on the motion of any interested party. Except as otherwise provided in this part, or as otherwise ordered by the court, a supervised personal representative has the same duties and powers as a personal representative who is not supervised.

Minn. Stat. § 524.3-501.

Appellant appears to dispute the probate court's acceptance of the second amended final accounting. She provides no caselaw supporting her claim, and her claims are inconsistent with the record. Appellant has not shown that the probate court erred in its approval of the estate's final account.

21

Moreover, the record clearly reflects that the probate court was involved in the administration of this estate on a regular and almost continuous basis over five years. It issued several orders restraining the PR's activities on appellant's motions. It issued numerous orders requiring the PR to submit final accounts and amended final accounts. Finally, the probate court held a three-day trial and allowed post-trial briefing concerning the final account and appellant's breach-of-fiduciary duty claims before approving the final account. The record demonstrates that the probate court did not fail to supervise the PR's administration of the estate.

## VII. Unclean Hands

Appellant argues that respondent Nicolas Allard should be restrained from "sharing the remedies that [appellant] may recover for the benefit of the Estate due to his 'Unclean Hands.'" Appellant alleges that Nicolas Allard "thwarted" her efforts to preserve and recover estate assets, contributed to the ongoing litigation proceedings by assisting the PR to sell assets, and engaging in using the PR for "personal harassment efforts" against appellant.

The doctrine of "unclean hands" bars a party who has acted inequitably from obtaining equitable relief. *See Gully v. Gully*, 599 N.W.2d 814, 825 (Minn. 1999). The equitable defense of unclean hands is premised on withholding equitable relief from a party guilty of illegal or unconscionable conduct. *Fred O. Watson Co. v. U.S. Life Ins. Co.*, 258 N.W.2d 776, 778 (Minn. 1977). "Unclean hands" requires more than "improper purpose" or recklessness; the doctrine requires illegal or unconscionable conduct or a showing of

22

bad faith. *Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 450 (Minn. App. 2001).

Here, the probate court made no findings of fact concerning this issue and appellant failed to move for a new trial or for amended findings of fact. *See* Minn. R. Civ. P. 52.02, 59.02. Our caselaw provides that an appellant cannot raise the issue of a district court's failure to make factual findings for the first time on appeal. *See Metro. Fed. Sav. & Loan Ass'n v. Adams*, 356 N.W.2d 415, 421 (Minn. App. 1984) (citing *Nelson v. Nelson*, 291 Minn. 496, 189 N.W.2d 413 (1971)), *review denied* (Minn. Jan. 2, 1985). Further, appellant seems to be attempting to use "the *equitable defense* of unclean hands" as a cause-of-action. *See Fred O. Watson Co.*, 258 N.W.2d at 778 (emphasis added). Nothing in the record indicates that Nicolas Allard is requesting "equitable relief." *Gully*, 599 N.W.2d at 825. The doctrine of unclean hands has no application here.

## VIII. Attorney Fees

The probate court did not address appellant's request for attorney fees based on the PR's misconduct because it determined that there was no such misconduct by the PR. Minn. Stat. §§ 524.3-712 and 524.3-720 permit an interested person to seek recovery for damages the estate sustains from the PR's improper exercise of power. Because the PR did not breach any fiduciary duties, the probate court properly denied appellant's request for attorney fees.

**Affirmed in part, reversed in part, and remanded.**